[No. 3,435.]

JOSEPH PONCE *v.* CHARLES McELVY, ADMINISTRATOR OF THE ESTATE OF PIERRE LE COAT, DECEASED, AND HENRY POWELL.

WHEN ASSIGNEE OF A NOTE HOLDS IT AS A PLEDGE.—When the payor of a note assigns to the payee, as collateral security for the payment of the note, a note and mortgage given by a third person to the payor, the payee holds this note and mortgage as a pledge, and an assignee of the payee who receives the note and mortgage upon the same terms, also holds them as a pledge.

ALLOWANCE BY AN ADMINISTRATOR OF A CLAIM HELD AS SECURITY.—If one who receives from his debtor an assignment of a note and mortgage given by a third person to the debtor, as collateral security for his debt, after the death of such third person, obtains from the administrator of his estate and the Probate Judge an allowance of the note and mortgage as a claim against the estate due to him, its character as a mere security for a debt remains unchanged, and the same rule obtains if the claim is presented by and allowed to an assignee of the first assignee who received the same upon the same terms.

IDEM.—In such case, if, after the allowance of the claim by the administrator, the assignee to whom the claim held as collateral security is allowed, bids in the mortgaged premises at administrator's sale, and appropriates the claim in payment of the purchase money, he has no higher right to the land than he had to the note and mortgage, and the land becomes the security.

WHEN TRUST ARISES IN RELATION TO A PLEDGE. —If the payee of a note receives from the payor a note and mortgage of a third person as collateral security for the payor's note, and upon the death of the payor receives from the administrator payment of the note and mortgage, he holds the balance of the money above what extinguishes the payor's and assignor's note in trust for the payor and assignor.

IDEM.—If, in such case, the assignee of the note and mortgage, instead of receiving the money from the administrator, has the note and mortgage allowed in his own name against the estate and bids in the land of the estate at administrator's sale, and applies the claim in payment of the purchase money, he holds the land subject to the same trust as he would have held the money if paid to him by the administrator.

IDEM.—The same rules apply as to such trusts in relation to a person who receives from the assignee such note and mortgage upon the same terms that the assignee received it.

IDEM.—In such cases the trust does not arise until the assignee of the note and mortgage receives the money in payment of the same, or becomes the purchaser of the land at administrator's sale.

LIMITATION OF ACTION AS TO TRUST.—If one who receives from another a note and mortgage of a third person in pledge as security for a debt due him by the pledgor, afterwards refuses to return the pledge to the pledgor upon tender of payment of the debt for which the pledge was made, this refusal does not set the Statute of Limitations in motion as to a trust which may afterwards arise by reason of the pledgee receiving money or land in payment of the note and mortgage.

LIMITATION OF ACTIONS AS TO COLLATERAL SECURITY. —If one who holds the note of another receives from him the note of a third person as collateral security, and afterwards, when tendered to him, refuses to receive payment of the note for which the collateral was given, and refuses to render an account and deliver up the collateral, this refusal does not make him the owner of the collateral, nor does it set the Statute of Limitations in motion so that he may plead it in bar to an action brought to make him account for money or property received by him on the collateral, more than four years after the refusal.

On the 30th day of November, 1859, Pierre Le Coat gave the plaintiff his promissory note for $567,00, payable sixteen months after date, bearing interest at $2\frac{1}{2}$ per cent. per month compounded every five months, and, to secure the same, gave said Ponce a mortgage on a mining claim in Nevada County. In 1864 the plaintiff and one Muchague were indebted to D. W. George on a promissory note given him in 1863 for one hundred dollars, and, as collateral, to secure said note of one hundred dollars, the plaintiff, in 1864, assigned to said George the note and mortgage given to him by Le Coat. In 1865, said George assigned the Le

Coat note and mortgage to R. Neville, who also received the same as collateral to secure the $100 note, and in the same year Neville delivered the note and mortgage to defendant Powell on the same conditions he had received it from George. Le Coat died in March, 1863, and, in October, 1869, defendant McElvy was appointed administrator of his estate, and in 1870 Powell presented to the administrator in his own name the note and mortgage as a claim against the estate, and it was allowed by the administrator and Probate Judge. In the year 1865 the plaintiff asked Powell to render him an account of all his claims against the Le Coat note and mortgage and offered to pay whatever was due, but Powell refused to render such account. The plaintiff then tendered to Powell $145,00, which he claimed was all that was due on the $100 note for which Powell held the Le Coat note as collateral security, and demanded of Powell the delivery of the Le Coat note and mortgage, Powell refused to accept the money and declined to deliver the Le Coat note and mortgage. The administrator sold the mortgaged premises to pay the debts of the estate, and Powell became the purchaser in August, 1870, for the sum of four thousand dollars, and applied the amount due on the Le Coat note and mortgage towards the purchase money. Powell claimed that the allowance of the claim to him made him the owner of the same in his own right. The plaintiff presented the Le Coat note and mortgage to the administrator for allowance on the 16th day of July, 1870, and he allowed it, but the Probate Judge rejected it on the 3d day of September, 1870, because it had already been allowed to Powell. This action was commenced on the 20th day of September, 1870.

The complaint recited all the facts, and the plaintiff brought into Court the $145 before tendered, and offered to pay such further sum as might be found due on the $100 note given to George. There was a prayer for judgment against the administrator, and a decree foreclosing the mortgage, and for a decree against Powell, that he held the note and mortgage in trust, and that he render an account of the amount due him on the $100 note, and that he

take nothing in his own right, and adjudging that the plaintiff have and receive all the benefit Powell had acquired from the note and mortgage, and that Powell surrender up all securities and conveyances he may have received on account of the note and mortgage.

The defendant Powell demurred because the action was barred by the Statute of Limitations of four years, and also of three years, and because the complaint did not state facts sufficient to constitute a cause of action. The Court sustained the demurrer, and the plaintiff appealed.

The other facts are stated in the opinion.

*G. N. Swezy* and *John Caldwell,* for the Appellant.

The bare transfer of the note and mortgage created a trust. (38 Cal. 457.) Trusts of this character are not barred by the Statute of Limitation. The *cestui que trust* may pursue the property or the proceeds thereof. (2 Story's Equity, Sec. 1520; 6 Wheat. 481; 1 Hare. R. 594; 5 Mylne and Cr. 16 and 17; 4 Mylne and Cr. 41; 4 How. Sup. R. 561; 9 Cal. 661 and 662.)

*Niles Searles,* for Respondent Powell.

Upon a demand by plaintiff and tender of amount due, coupled with a refusal to deliver by defendant in 1865, plaintiff could have maintained an action at once and this being so, the Statute of Limitations was put in motion. (*Cunningham* v. *Hawkins,* 24 Cal. 406; *Millard* v. *Hathaway,* 27 Cal. 146.)

If the Statute of Limitations did not commence to run when plaintiff tendered to defendant the money due him, and demanded a delivery of the note and mortgage, we would respectfully inquire of appellant's counsel when and under what circumstances it could have been put in motion? Plaintiff could have maintained his action immediately on making the tender and demand in 1865. It follows as a legal corollary, that the Statute of Limitation then began to run, and four years thereafter the reciprocal right of the parties against each other ceased to have any such existence

as can be enforced as against the bar of the statute. The tender and demand terminated the trusteeship. (*Skidmore* v. *Taylor*, 29 Cal. 618.) And set the Statute of Limitation in motion. (*Baker* v. *Joseph*, 16 Cal. 172.)

The complaint, as against the defendant Powell, proceeds upon the theory that he is a trustee of plaintiff, yet it fails to show either an express trust, or any such state of facts as raise an implied or resulting trust. The mere allegation of the complaint that his note and mortgage were received by the several parties as trustees, is not such a statement of facts as will warrant the Court in holding defendant Powell a trustee.

A mortgagee, or a holder in pledge of personal property, may or may not be trustee of the mortgagor or pledgor. His relation depends upon the facts and circumstances of the case, and where it is sought to hold him as a trustee, the facts constituting him such must be stated. Trusts are not presumed except in case of absolute necessity. (2 Story Eq. Jurisprudence, Sec. 1,195.)

The claim founded upon the note and mortgage having been allowed by the administrator and Probate Judge, the note and mortgage were thereby merged in the judgment of the Court.

*Swezy & Caldwell*, in reply.

The complaint shows fully that Powell came into the possession of the note and mortgage as a trustee, holding the same as had his transferee—as a collateral. The complaint does not show that such relation terminated, even a year before suit. Is it true that a demand for an accounting terminates the trust? We unhesitatingly say not. The relation continues as much after as before the demand. Does a guardian, who refuses to pay over money, cease to be a trustee? Many persons would feel outraged at the proposition that their refusal to account, or to pay over money, terminated their trust relation. The failure to pay may be inability; and the failure to account may arise from a like cause. These are but elements going to show an adverse holding or repudiation of the trust, and do not constitute

an adverse holding or repudiation of the trust. The complaint shows that Powell never did repudiate the trust, or claim to hold adversely, until just before the bringing of this action.

By the Court, WALLACE, C. J.:

The note and mortgage made to Ponce by Le Coat was received by the defendant Powell merely as collateral to secure the payment of the note of Ponce, as given by the latter to George. It was, as between these parties, a pledge. The assignment which Ponce made was not intended to transfer the title any further than to enable the assignee to obtain satisfaction of the debt from Le Coat. To give it any effect other than this would be to do violence to the obvious intention of the parties, which was to create a security for the protection of the note to George—nothing more. When, therefore, the defendant Powell, in virtue of the assignment running to him, obtained in his own name from the defendant McElvy, administrator of the estate of Le Coat, a recognition of the validity of the claim, and so constituted it an acknowledged debt of the estate, its character as being a mere security between the parties remained unchanged. When at a later period the defendant Powell, in his character as the accredited holder of the claim, bid in the mortgaged premises at the administrator's sale, and appropriated the entire claim in part payment of the purchase money, he obtained, as against Ponce, no better or higher right to the land than he had theretofore held to the note and mortgage themselves—the land was thenceforth the security, representing in that respect the note and mortgage which it had supplanted.

But at this point of the transaction the relations of the parties changed in the important respect that a trust arose for the first time in favor of Ponce. The George note had been extinguished, and the relation of debtor and creditor based upon that note had ceased. The pledgee, the defendant Powell, had realized by the purchase the whole value of the pledge, which being in excess of the debt due to him,

that excess he held as trustee for Ponce. Had this been effected by means of a full payment in money made by the administrator to Powell, the amount of the trust fund in the hands of the latter would have been readily ascertainable by subtracting the amount of the George note and interest from the amount received upon the Le Coat note—the balance remaining would have constituted the subject of the trust. The purchase of the land, effected by Powell for a larger sum than the amount of the latter note and interest, while it necessitates the proceedings upon the part of Ponce, to follow the trust interest in the land itself, does not alter in substance the principle upon which it is to be done, for the whole of Le Coat debt was absorbed in the purchase. Upon this view we have already virtually disposed of the defense of the Statute of Limitations set up by Powell. The purchase was made by him in 1870, and the trust with which he is charged in this suit arose at that time, and not before then. His refusal, made in 1865, to turn over to Ponce the note and mortgage of Le Coat, upon the tender of the supposed amount of the George note by Ponce could not operate to set the statute in motion against the trust, which, as we have seen, first arose some five years afterward by his realization of the overplus of the Le Coat note and the simultaneous satisfaction of his own debt, as represented by the George note.

The effect of that refusal, upon whatever ground it may have proceeded, did not operate to change the nature of the right by which he held the possession of the Le Coat note from that of a mere security to one of absolute ownership, nor did the lapse of the intervening period of time constitute a bar to his obligation, subsequently arising, to account for the balance remaining in his hands after his own claim had been satisfied.

Judgment reversed, and cause remanded, with directions to overrule the demurrer to the complaint.

Mr. Justice Rhodes did not express an opinion.

Mr. Justice Niles, having been of counsel in matters pertaining to the case, did not participate in the decision.